UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- x
JOSE Y. LOPEZ, PLACIDO MANJARREZ,      :
and PEDRO B. LOPEZ,                     :
                                        :          **REPORT AND RECOMMENDATION**
                        Plaintiffs,     :
                                        :             14 Civ. 2057 (FB) (VMS)
            -against-                    :
                                        :
PMMT INC., d/b/a Thai Cafe and          :
THONGPANICH "DOE",                      :
                                        :
                        Defendants.     :
---------------------------------------------------------- x
**Vera M. Scanlon, United States Magistrate Judge:**

Plaintiffs Jose Y. Lopez, Placido Manjarrez and Pedro B. Lopez (collectively,

"Plaintiffs") bring this action against Defendants PMMT Inc., d/b/a Thai Cafe ("Thai Cafe") and

Thongpanich "Doe" pursuant to the Federal Labor Standards Act ("FSLA"), 29 U.S.C. §§ 201 et

seq., and the New York Labor Law ("NYLL"), N.Y. Lab. Law § 650 et seq., as amended by the

Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195. Docket No. 14. Plaintiffs seek to

recover unpaid overtime, liquidated damages, civil penalties, unpaid spread-of-hours wages,

post-judgment interest and attorney's fees and costs pursuant to the FLSA and NYLL. Id. Upon

Thai Cafe's failure to answer or otherwise respond to this action, the Clerk of Court entered a

certificate of default against Thai Cafe. Docket Entry 5/16/16. Thereafter, Plaintiffs filed a

motion for default judgment against Thai Cafe.[1] Docket No. 20. The Honorable Frederic Block

referred the motion to me for a Report and Recommendation.

For the following reasons, it is respectfully recommended that the District Judge **grant in**

**part and deny in part** the default judgment motion; **find** Defendant Thai Cafe liable to

---

[1]      As discussed below, see Footnote 3, infra, Plaintiffs do not move for default judgment
against Defendant Thongpanich "Doe".

Plaintiffs for violations of the FLSA and the NYLL as discussed herein; **enter** judgment against Defendant Thai Cafe in the amount of **$85,788.07** in damages, which represents compensatory damages in the amount of $34,915.12 for Jose Y. Lopez; $21,521.60 for Placido Manjarrez; and $29,351.35 for Pedro B. Lopez; plus post-judgment interest as calculated herein, and **$6,428.10** in attorney's fees and costs.

## I.    BACKGROUND

The following facts are derived from the Amended Complaint and are presumed true for the purposes of this motion.  Docket No. 14.  Facts relating to the procedural history of the case are derived from the docket.

### A.    Factual Background Regarding Thai Cafe And Its Employment Policies And Practices

Thai Cafe is a domestic business corporation organized under New York law, with a registered address within the Eastern District of New York at 925 Manhattan Avenue, Brooklyn, New York 11222.  Id. ¶ 6.  Thai Cafe owned and operated a Thai restaurant located at the aforementioned address.  Id. ¶ 7.  Thai Cafe is an employer under both the FLSA, 29 U.S.C. § 203(d), and NYLL § 2(6).

Plaintiffs allege that, at all times relevant to this action, Thai Cafe was an "enterprise engaged in commerce" pursuant to the FLSA, 29 U.S.C. § 203, because it had: (1) employees engaged in commerce or in the production of goods for commerce, or that handled, sold, or otherwise worked on goods or materials that had been moved in or produced for commerce; and (2) an annual gross volume of sales of not less than $500,000.00.  Id. ¶ 11.

Plaintiffs further allege that, at all relevant times, Thai Cafe: (1) knowingly and willfully violated federal and state laws by failing to pay Plaintiffs lawfully earned overtime compensation pursuant to both the FLSA, 29 U.S.C. § 207(a)(1), and the NYLL, 12 N.Y.C.R.R. § 146-1.4; (2)

2

failed to pay Plaintiffs spread-of-hours premiums under the NYLL, 12 N.Y.C.R.R. § 142-2.4;

and (3) failed to provide Plaintiffs with proper wage statements under the NYLL, N.Y. Lab. Law

§ 195(3) (2011).  Docket No. 14 ¶¶ 49-50, 53-54, 57, 61.

**B.      Factual Background Regarding Plaintiffs' Work As Employees Of Defendant**

**1.      Jose Y. Lopez**

Jose Y. Lopez worked as a cook at Thai Cafe from May 1, 2011 through October 18,

2013.  Id. ¶ 14.  Throughout his employment, Mr. Lopez consistently worked as follows: 14

hours (10:00 a.m. to 12:00 a.m.) on Mondays; 13 hours (10:00 a.m. to 11:00 p.m.) on Tuesdays,

Wednesdays, Fridays and Saturdays; and 8 hours (10:00 a.m. to 6:00 p.m.) on Thursdays.  Id. ¶¶

16-17.  Mr. Lopez was paid a fixed salary of $670.00 per week—$130.00 via check and $540.00

via cash—during his employment.  Id. ¶¶ 19-20.  As Mr. Lopez regularly worked 64 hours per

week, his hourly wage amounted to $10.47 per hour ($670 / 64 [hours per week]).[2]  Throughout

his employment, Mr. Lopez did not receive overtime compensation, nor did he receive spread-of-

hours pay.  Id. ¶¶ 18, 21.

**2.      Placido Manjarrez**

Placido Manjarrez worked as a dishwasher at Thai Cafe from June 1, 2011 through

October 18, 2013.  Id. ¶¶ 24-25.  Throughout his employment, Mr. Manjarrez consistently

---

[2]      In the Amended Complaint, Plaintiffs do not allege the regular hourly rate they each received; instead, Plaintiffs allege only the total weekly compensation received and the number of hours per week they worked.  Docket No. 14 ¶¶ 19-20, 27-28, 40.  As explained in more detail in Section I(E), infra, in support of their motion for default judgment, Plaintiffs submitted charts calculating their respective unpaid wages.  Docket No. 20-6.  According to these charts, Plaintiffs calculate their regular hourly rates by dividing their weekly compensation by the number of hours worked per week.  See id.  The Court has adopted this method to calculate Plaintiffs' regular hourly rate of pay.  It is worth noting that under the NYLL, subject to certain exceptions, "[i]f an employer fails to pay an employee an hourly rate of pay, the employee's regular hourly rate of pay shall be calculated by dividing the employee's total weekly earnings . . . by the lesser of 40 hours or the actual number of hours worked by that employee during that work week."  12 N.Y.C.R.R. § 146-3.5.

worked as follows: 10 hours per day (4:00 p.m. to 2:00 a.m.), Monday through Saturday.  Id. ¶¶ 27-28.  Mr. Manjarrez was paid a fixed cash salary of $460.00 per week during his employment. Id. ¶ 30.  As Mr. Lopez regularly worked 60 hours per week, his hourly wage amounted to $7.67 per hour ($460 / 60 [hours per week]).  Throughout his employment, Mr. Lopez did not receive overtime compensation, nor did he receive spread-of-hours pay.  Id. ¶¶ 29, 31.

### 3.    Pedro B. Lopez

Pedro B. Lopez worked as a cook at Thai Cafe from May 1, 2011 through October 18, 2013.  Id. ¶ 35.  Throughout his employment, Mr. Lopez consistently worked as follows: 10.5 hours per day (12:00 p.m. to 10:30 p.m.), Monday through Saturday.  Id. ¶¶ 36-38.  Plaintiff was paid a fixed salary of $570.00 per week—$360.00 via check and $210.00 via cash—during his employment.  Id. ¶ 40.  As Mr. Lopez regularly worked 63 hours per week, his hourly wage amounted to $9.05 per hour ($570 / 63 [hours per week]).  Throughout his employment, Mr. Lopez did not receive overtime compensation, nor did he receive spread-of-hours pay.  Id. ¶¶ 39, 42.

### C.    Procedural History

Plaintiffs commenced this action against Defendants Thai Cafe and Thongpanich "Doe" on April 1, 2014.  Docket No. 1.  Plaintiffs subsequently filed an Amended Complaint, which is the operative pleading.  Docket No. 14.  Plaintiffs filed proof of service of the Summons and Amended Complaint upon Defendants Thai Cafe and Thongpanich "Doe" on September 17, 2015.  Docket Nos. 15-16.  Defendants failed to answer or otherwise respond.  Plaintiffs thereafter requested a Certificate of Default against both Defendants.  Docket No. 18.  The Clerk

of Court entered a Certificate of Default against only Thai Cafe.[3]  Plaintiffs thereafter filed the

instant motion for default Judgment against Thai Cafe.  Docket No. 20.[4]  On June 13, 2016,

District Judge Block referred Plaintiffs' default judgment motion to the undersigned for a Report

and Recommendation.  Docket Entry 6/13/16.

**D.    Plaintiffs' Claims**

Pursuant to the FLSA and the NYLL, Plaintiffs seek unpaid overtime compensation,

related liquidated damages, post-judgment interest, attorney's fees and costs.  Docket No. 14 ¶¶

51, 54.  Under the NYLL alone, Plaintiffs seek damages for record-keeping violations and

spread-of-hours premiums.  Id. ¶¶ 57-58, 61-62.

**E.    Plaintiffs' Affidavits And Other Documentary Evidence Submitted In
       Support Of Their Request For Damages**

Each plaintiff submitted an affidavit attesting to the time period during which he worked

for Thai Cafe and describing the relevant aspects of his employment, including the nature of the

work, the hours worked and the compensation received.  Docket Nos. 20-8, 20-9, 20-10.  These

affidavits are consistent with the allegations contained in the Amended Complaint.  Plaintiffs

also submitted charts calculating their respective unpaid wages.  Docket No. 20-6. These charts

---

[3]     The Clerk of Court did not enter a Certificate of Default against Defendant Thongpanich "Doe" because "a default cannot be entered as to a 'Doe' Defendant."  Docket Entry 05/16/2016.

[4]     There is some discrepancy between Plaintiffs' notice of motion and Plaintiffs' memorandum in support of their motion as to which defendants Plaintiffs seek a default judgment.  Docket No. 20; compare Docket No. 21.  Plaintiffs' notice of motion seeks "[j]udgment of default against Defendants," Docket No. 20 (emphasis added), while Plaintiffs' memorandum in support of their motion only seeks default judgment against Thai Cafe, Docket No. 21.  As the certificate of default was only entered against Thai Cafe, the instant motion is considered as to Defendant Thai Cafe only.  See Fed. R. Civ. P. 55(a)-(b).  Inasmuch as Plaintiffs intend to pursue their claims against Defendant Thongpanich "Doe" following the District Court's issuance of a ruling on the default judgment motion, it is respectfully recommended that the District Court direct Plaintiffs to file a second amended complaint identifying Thongpanich "Doe" and serve same pursuant to Fed. R. Civ. P. 4 or otherwise file a stipulation of dismissal with regard to such defendant by a date certain.

show: (1) overtime compensation purportedly owed to each Plaintiff, plus liquidated damages under both the NYLL and FLSA; and (2) damages purportedly owed to each Plaintiff due to Thai Cafe's failure to furnish wage statements.[5]

In support of their request for attorney's fees and costs, Plaintiffs submitted an invoice from their attorneys, detailing their attorney's work, rates requested, hours and costs.  <u>Docket No. 20-5</u>.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 55 delineates the procedure by which a party may be granted a default Judgment.  <u>See Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC</u>, 779 F.3d 182, 186 (2d Cir. 2015) (citing Fed. R. Civ. P. 55); <u>Enron Oil Corp. v. Diakuhara</u>, 10 F.3d 90, 95-96 (2d Cir. 1993) (same).  The process is initiated when a party against which judgment is sought fails to plead or otherwise defend against the action, and this failure is sufficiently demonstrated to the court.  <u>See</u> Fed. R. Civ. P. 55(a).  The clerk of court must then enter that party's default on the record.  <u>See id.</u>  After the entry of default, the court may enter a default judgment.  <u>See</u> Fed. R. Civ. P. 55(b).

The court will deem the defaulting party as having admitted to all the allegations in a well-plead complaint on a motion for default Judgment.  <u>See Cement & Concrete Workers Dist. Council Welfare Fund v. Metrofoundation Contractors, Inc.</u>, 699 F.3d 230, 234 (2d Cir. 2012); <u>Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.</u>, 973 F.2d 155, 158 (2d Cir. 1992).  The admission does not extend to the damages sought by the moving party.  <u>See Cement & Concrete Workers</u>, 699 F.3d at 234.  Instead, damages must be proven by sufficient evidence provided by the plaintiff "based upon evidence presented at a hearing or upon a review of detailed affidavits

---

[5]     Despite asserting a spread-of-hours claim, Plaintiffs' charts do not contain any calculations for damages in this regard.

and documentary evidence." Id.; see Fed. R. Civ. P. 55(b)(2); Fustok v. ContiCommodity

Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988), aff'd, 873 F.2d 38 (2d Cir. 1989).

Where the damages sought by the plaintiff can be demonstrated by documentary evidence

and determined with certainty by computation, the court need not hold a hearing, but instead, it

may enter the judgment against the defendant at the plaintiff's request. See Fed. R. Civ. P.

55(b)(1). If necessary, the court will conduct a hearing to determine appropriate damages. See

Fed. R. Civ. P. 55(b)(2). In either circumstance, the damages awarded must be ascertained "with

reasonable certainty." Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir.

1999); see Cement & Concrete Workers, 699 F.3d at 232.

## III.    DISCUSSION

### A.    Service

"Under Rule 55(b)[,] default Judgment shall be entered if a defendant has failed to plead

or otherwise defend an action." Parise v. Riccelli Haulers, Inc., 672 F. Supp. 72, 74 (N.D.N.Y.

1987). In light of this, the Court should inquire as to whether Plaintiffs have demonstrated that

Thai Cafe had notice of the action and an opportunity to respond. I look to service to see if Thai

Cafe had notice of the suit. Fed. R. Civ. P. 4(e)(1) allows service to be made in accordance with

the service rules of the state where the district is located or service is made. New York Business

Corporation Law ("N.Y.B.C.L.") § 306(a) allows for service of process on an agent of a

corporation.

Here, the Amended Complaint was delivered by Plaintiffs' process server to Kantaphong

M., manager of the restaurant and a self-described authorized agent for Thai Cafe, at Thai Cafe's

place of business, located at 925 Manhattan Avenue, Brooklyn New York 11222, on September

3, 2015. See N.Y.B.C.L. § 306(a); see also Docket No. 15.

On the basis of these facts, I find that service upon Thai Cafe was proper under the

N.Y.B.C.L.[6]

## B.     The Factors Relevant To A Default Judgment Are Satisfied

"In deciding a motion for default judgment, the Court must consider the following three

factors: (1) 'whether the defendant's default was willful; 2) whether defendant has a meritorious

defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer

as a result of the denial of the motion for default judgment.'"  Indymac Bank, F.S.B. v. Nat'l

Settlement Agency, Inc., 07 Civ. 6865 (LTS) (GWG), 2007 WL 4468652, at *1 (S.D.N.Y. Dec.

20, 2007) (quoting Mason Tenders Dist. Council v. Duce Const. Corp., 02 Civ. 9044 (LTS)

(GWG), 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003)); see Guggenheim Capital, LLC v.

Birnbaum, 722 F.3d 444, 455 (2d Cir. 2013) (applying these factors in review of a district court's

grant of default judgment).

Beginning with the first factor at issue, I am satisfied that Thai Cafe's failure to respond

to the Amended Complaint demonstrates willfulness.  See Bds. of Trs. of Ins., Annuity, &

Apprenticeship Training Funds of Sheetmetal Workers' Int'l Ass'n, Local Union No. 137 v.

Frank Torrone & Sons, Inc., 12 Civ. 3363 (KAM) (VMS), 2014 WL 674098, at *4 (E.D.N.Y.

---

[6]     It is worth noting that, according to the New York State Department of State, Division of
Corporations' website, Thai Cafe dissolved on July 17, 2015.  See
https://appext20.dos.ny.gov/corp_public/CORPSEARCH.ENTITY_INFORMATION?p_nameid
=3881277&p_corpid=3870449&p_entity_name=THAI%20CAFE&p_name_type=%25&p_searc
h_type=BEGINS&p_srch_results_page=0 (last visited August 16, 2016).  "In New York,
dissolution does not affect a corporation's amenability to service of process."  Ortiz v. Green
Bull, Inc., 10 Civ. 3747 (ADS) (ETB), 2011 WL 5553834, at *3 (E.D.N.Y. Nov. 14, 2011)
(citing N.Y.B.C.L. § 1006(a)(4)).  N.Y.B.C.L. § 1006(a)(4) provides that "[a] dissolved
corporation . . . may sue or be sued in all courts and participate in actions and proceedings,
whether judicial administrative, arbitrative or otherwise, in its corporate name, and process may
be served by or upon it."

Feb. 3, 2014), adopted by 2014 WL 674098 (E.D.N.Y. Feb. 3, 2014) (the defendant's non-appearance and failure to respond equated to willful conduct); Traffic Sports USA v. Modelos Restaurante, Inc., 11 Civ. 1454 (ADS) (AKT), 2012 WL 3637585, at *2 (E.D.N.Y. Aug. 1, 2012), adopted by 2012 WL 3626824 (E.D.N.Y. Aug. 22, 2012) (finding the defendant's failure to respond "in any way" to the Complaint, combined with the affidavits demonstrating proper service, confirmed beyond "any doubt" that the defendant's failure to respond was willful). Here, Plaintiffs have submitted to the Court an affidavit of service showing that the summons and Amended Complaint were properly served upon Thai Cafe, yet Thai Cafe neither responded nor requested additional time in which to do so.  This failure to respond to the Amended Complaint establishes the requisite willfulness.

      As to the second factor under consideration, Defendants cannot establish a meritorious defense, because where a defendant has not "filed an answer, there is no evidence of any defense."  Bridge Oil Ltd. v. Emerald Reefer Lines, LLC, 06 Civ. 14226 (RLC) (RLE), 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008) (citing Mason Tenders Dist. Council v. Duce Constr. Corp., 02 Civ. 9044 (LTS) (GWG), 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003)); see Joseph v. HDMJ Rest., Inc., 970 F. Supp. 2d 131, 143 (E.D.N.Y. 2013) ("Where a defendant fails to answer the complaint, courts are unable to make a determination whether the defendant has a meritorious defense to the plaintiff's allegations, and, accordingly, this factor weighs in favor of granting a default judgment.").

      Moving to the third and final factor, to ignore Thai Cafe's default would prejudice Plaintiffs, as "without an entry of default judgment, Plaintiff[s] would be unable to recover" for any properly asserted claims.  Flanagan v. N. Star Concrete Constr., Inc., 13 Civ. 2300 (JS) (AKT), 2014 WL 4954615, at *7 (E.D.N.Y. Oct. 2, 2014).

Having found that all three factors weigh in favor of Plaintiffs, I find that a default judgment is proper and constitutes an admission of the allegations contained in the Amended Complaint.  I now examine whether these facts establish Thai Cafe's liability under the FLSA and NYLL.

**C.     Liability**

**1.     Plaintiffs Qualify For the FLSA's And The NYLL's Protections As Employees Of Thai Cafe**

**i.     Plaintiffs Qualify For The FLSA's Protections**

In order to establish a claim for overtime compensation under the FLSA, a plaintiff must show: (1) that he is an "employee" within the meaning of the regulation; and (2) that the defendant is an enterprise engaged in either commerce or the production of goods for commerce. See 29 U.S.C. § 207(a).

The FLSA defines an "employee" as "any individual employed by the employer."  29 U.S.C. § 203(e)(1).  Plaintiffs have met the first condition, in that they have alleged they are employees within the meaning of the regulation.  See Docket No. 14 ¶¶ 3-5; Garcia v. Badyna, 13 Civ. 4021 (RRM) (CLP), 2014 WL 4728287, at *5 (E.D.N.Y. Sept. 23, 2014) ("Plaintiff alleges in the Complaint that he was an employee . . . as defined by the FLSA [and] therefore, [] for purposes of this default, he qualifies as an 'employee' under the FLSA.").

As to the second requirement, Plaintiffs have demonstrated that Thai Cafe is an "enterprise engaged in commerce."  The FLSA defines such an enterprise as one that "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce" and has an "annual gross volume of sales . . . not less than $500,000 . . . ."  29 U.S.C. § 203(s)(i-ii).  The term "commerce" is defined as "trade, commerce, transportation, transmission, or communication among the several States or between any State

and any place outside thereof."  29 U.S.C. § 203(b).  In their Amended Complaint, Plaintiffs allege both that the annual gross volume of sale or business was not less than $500,000, and that Plaintiffs handled food, cleaning supplies and other materials which were delivered to the business from outside New York State.  Docket No. 14 ¶¶ 10-11; see Gonzalez v. Gan Israel Pre-School, 12 Civ. 6304 (MKB) (VMS), 2014 WL 1011070, at *6 (E.D.N.Y. Mar. 14, 2014) (finding that the plaintiff had fulfilled the FLSA's interstate commerce requirement because the defendant, whose business was located in New York, purchased soap, bleach and other cleaning products for the plaintiff's which were manufactured in facilities outside the state); Smith v. Nagai, 10 Civ. 8237 (PAE) (JCF), 2012 WL 2421740, at *2 (S.D.N.Y. May 15, 2012) (stating that the plaintiff had fulfilled the FLSA's interstate commerce requirement with evidence that the defendant, whose principal place of business was New York, "purchase[d] fish, ginger and flour, among other items" from outside the state); Archie v. Grand Centr. P'ship, Inc., 997 F. Supp. 504, 530 (S.D.N.Y. 1998) (finding workers had handled goods that had moved in interstate commerce because some of their "bags, brooms, shovels, pails, [etc.] . . . undoubtedly moved in interstate commerce to New York City").

Accordingly, Plaintiffs are entitled to the statutory protection of the FLSA.

### ii.    Plaintiffs Qualify For The NYLL's Protections

To prevail on a claim under the NYLL, Plaintiffs are required to show that they were "employees" and that Thai Cafe was an "employer" pursuant to the statute.  See Lauria v. Heffernan, 607 F. Supp. 2d 403, 407-08 (E.D.N.Y. Apr. 17, 2009).  Under the NYLL, an employee is "any person employed for hire by an employer in any employment."  N.Y. Lab. Law § 190(2).  An employer is defined as "any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service."

11

N.Y. Lab. Law § 190(3).  "Unlike the FLSA, the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law."  Garcia, 2014 WL 4728287, at *6.

In determining whether an employer-employee relationship exists, courts consider "the degree of control exercised by the purported employer over the results produced or the means used to achieve the results."  Bynog v. Cipriani Group, Inc., 802 N.E.2d 1090, 1093 (2003).  The New York Court of Appeals has recognized five factors to evaluate whether an employer-employee relationship exists.  Id.  These factors are whether the plaintiff: "(1) worked at his own convenience; (2) was free to engage in other employment; (3) received fringe benefits; (4) was on the employer's payroll; and (5) was on a fixed schedule."  Bynog, 802 N.E.2d at 1093.

Beginning with the first factor, Plaintiffs did not work at their own convenience insofar as their shifts required them to arrive, and remain, at the restaurant for specific hours.  Docket No. 14 ¶¶ 17, 28, 38; cf. Sellers v. Royal Bank of Canada, 12 Civ. 1577 (KBF), 2014 WL 104682, at *6 (S.D.N.Y. Jan. 8, 2014) (concluding that the plaintiff worked at his own convenience since he could arrive at work, leave work, and break, all at his pleasure).  The fourth and fifth factors likewise indicate the existence of an employer-employee relationship, as Plaintiffs were all on Thai Cafe's payroll (receiving fixed weekly salaries throughout their respective employments), Docket No. 14 ¶¶ 19-20, 30, 40-41; and they all worked fixed, weekly schedules, id. ¶¶ 16-17, 27-28, 37-38.

The Amended Complaint provides little information as to the second and third factors, as it does not explicitly state whether Plaintiffs were free to engage in other employment or received any fringe benefits.  It is, however, unlikely that Plaintiffs were free to work other jobs, as they each worked at least 60 hours per week.  Id. ¶¶ 16-17, 27-28, 37-38.  Given the nature of

this action, it is doubtful that Thai Cafe provided fringe benefits but failed to pay Plaintiffs their lawful wages.  These two factors, however, "merit modest weight."  Hart v. Rick's Cabaret Int'l., Inc., 967 F. Supp. 2d 901, 925 (S.D.N.Y. 2013).

Furthermore, it has been largely acknowledged that where the employer-employee relationship is found pursuant to the FLSA, it will also be found under the NYLL.  See Landaeta v. New York & Presbyterian Hosp., Inc., 12 Civ. 4462 (JMF), 2014 WL 836991, at *4 (S.D.N.Y. Mar. 4, 2014).  In fact, as of 2014, "there appears to have never been a case in which a worker was held to be an employee for purposes of the FLSA but not the NYLL (or vice versa)."  Hart, 967 F. Supp. 2d at 924.

In sum, Plaintiffs qualify as employees under the NYLL.

### 2.    The Relevant Limitations Periods Under The FLSA And The NYLL

"The statute of limitations under the FLSA is two years, 'except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.'" Rosario v. Valentine Ave. Discount Store, Co., 828 F. Supp. 2d 508, 519 (E.D.N.Y. 2011) (quoting 29 U.S.C. § 255(a), which states the applicable statute of limitations for claims relating to "unpaid minimum wages, unpaid overtime compensation, or liquidated damages").  As Plaintiffs allege that Thai Cafe knowingly and willfully violated the FLSA, Docket No. 14 ¶¶ 12, 23, 33, the three-year limitations period applies.  The NYLL provides a six-year period within which to bring suit.  See N.Y. Lab. Law §§ 198(3), 663(3).

As the original complaint in this action was filed on April 1, 2014, Docket No. 1, Plaintiffs' NYLL and FLSA claims are timely insofar as they accrued on or after April 1, 2008 and April 1, 2011, respectively.  Because each Plaintiff alleges that he commenced working for

Thai Cafe on either May 1, 2011 or June 1, 2011, <u>Docket No. 14</u> ¶¶ 14, 25, 35, Plaintiffs' NYLL

and FLSA claims both fall within the respective statute of limitations periods.

3.  <strong>Thai Cafe's Liability Under The FLSA And The NYLL</strong>

i.  <strong>Thai Cafe Should Be Held Liable To Plaintiffs For Failing To<br>Pay Overtime Compensation As Required By The FLSA And<br>The NYLL</strong>

Having determined that Plaintiffs are entitled to the protections of the FLSA and the

NYLL, and that their claims have been brought within the respective statutes of limitation, I now

conclude that Plaintiffs have sufficiently alleged Thai Cafe's violations of both federal and state

overtime laws.

The FLSA mandates that no employee shall work "for a workweek longer than forty

hours unless such employee receives compensation for his employment in excess of the hours

above specified at a rate not less than one and one-half times the regular rate at which he is

employed."  29 U.S.C. § 207; <u>see</u> <u>Nakahata v. New York-Presbyterian Healthcare Sys., Inc.</u>, 723

F.3d 192, 200 (2d Cir. 2013) ("The FLSA mandates that [a covered employee] be compensated

at a rate of no less than one and one-half times the regular rate of pay for any hours worked in

excess of forty per week.") (citing 29 U.S.C. § 207(a)).  The NYLL analogue of this provision is

nearly identical, adopting the FLSA's definition of overtime, and requiring a time and one-half

overtime compensation rate.  <u>See</u> 12 N.Y.C.R.R. § 142-2.2.

In three recent opinions, the Second Circuit dismissed FLSA overtime claims and, in the

process, clarified "the degree of specificity" that a plaintiff must meet in order to "make a

Section 207(a)(1) FLSA overtime claim."  <u>Lundy v. Catholic Health Sys. of Long Island, Inc.</u>,

711 F.3d 106, 114 (2d Cir. 2013); <u>see</u> <u>Nakahata</u>, 723 F.3d at 200-01; <u>Dejesus v. HF Mgmt.</u>

14

Servs., LLC, 726 F.3d 85, 88-89 (2d Cir. 2013).  A plaintiff's burden, as clarified by these three cases, applies in the context of the NYLL as well.  See 12 N.Y.C.R.R. § 142-2.2 (stating that an employer shall pay an employee for overtime "in the manner and methods provided in and subject to the exemptions of [the FLSA]"); see also Rocha v. Bakhter Afghan Halal Kababs, Inc., 44 F. Supp. 3d 337, 357 (E.D.N.Y. 2014) (citing & quoting Nakahata, 723 F.3d at 200, for the proposition that "[t]he NYLL adopts th[e] same standard . . . [as the] FLSA definition of overtime into the [NYLL]").

        In Lundy, the Second Circuit held that "in order state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours."  Lundy, 711 F.3d at 114.  The Court then dismissed the FLSA plaintiff's overtime claim because it alleged that, on top of a regular 37.5-hour workweek, the plaintiff had to complete a smattering of additional small tasks which "suppl[ied] nothing but low-octane fuel for speculation, not the plausible claim that is required." Id. at 114-15.

        Later that same year, in Nakahata, the Second Circuit built upon the notion of permissible inference, stating that an FLSA-plaintiff must provide "sufficient detail about the length and frequency" of unpaid work in order to support "a reasonable inference" that he or she "worked more than forty hours in a given week."  Nakahata, 723 F.3d at 201.

        Finally, in DeJesus, the Second Circuit discussed Lundy and Nakahata, and clarified that it did not mean to provide an "all-purpose pleading template [for] alleging overtime" by, for example, requiring that all plaintiffs with FLSA overtime compensation claims actually estimate the number of hours they worked in "some or all workweeks."  DeJesus, 726 F.3d 85 at 88-90. Instead, DeJesus stated that "some factual context" was necessary in FLSA overtime claim

allegations in order to "nudge [an FLSA plaintiff's] claim 'from conceivable to plausible.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Here, in contrast to Lundy, Nakahata and Dejesus, Plaintiffs have each provided detailed weekly work schedules, demonstrating that each Plaintiff consistently worked well over 40 hours per week without compensation at the required rate of one and one-half times their regular rate. Docket No. 14 ¶¶ 17-18, 27-28, 37-38; see Tackie v. Keff Enterps. LLC, 14 Civ. 2074 (JPO), 2014 WL 4626229, at *3 (S.D.N.Y. Sept. 16, 2014) (finding that the FLSA plaintiff adequately alleged an overtime claim by stating that "she worked a fairly regular schedule of forty hours per week, and she occasionally worked more than forty hours per week"). Unlike the Nakahata plaintiffs, who attempted to prove that they worked more than forty hours a week by referencing several small uncompensated tasks which, when added up, arguably took them over forty hours of work in a given week, Nakahata, 723 F.3d at 201, Plaintiffs' allegations, here, demonstrate the complained-of overtime without the need for any inference because each plaintiff's set schedule exceeded forty hours per workweek, Docket No. 14 ¶¶ 17-18, 27-28, 37-38.

Therefore, it is respectfully recommended that the District Judge **find** Thai Cafe liable to Plaintiffs for failing to pay their overtime premium compensation pursuant to the FLSA and the NYLL for the entirety of each respective Plaintiff's employment.

### ii.   Plaintiffs Are Not Entitled To Spread-Of-Hours Pay Pursuant To The NYLL

Plaintiffs also allege that they are entitled to damages for unpaid spread-of-hours compensation.[7]  The NYLL provides that when an employee works more than 10 hours in one day, they "shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the

---

[7]     Despite this allegation, Plaintiffs have not submitted any calculations to the Court detailing the damages they claim that they are entitled to under this provision.

minimum wage required."[8]  12 N.Y.C.R.R. § 142-2.4; N.Y. Lab. Law § 650 et seq.  The New

York State Department of Labor has interpreted this provision as applying only to employees

earning minimum wage.  See Guadalupe v. Tri-State Employment, Mgmt. & Consulting, Inc., 10

Civ. 3840 (NG) (CLP), 2013 WL 4547242, at *12-13 (E.D.N.Y. Aug. 28, 2013).  In fact, "[t]he

majority of district courts in this circuit are in accord with the New York Department of Labor's

position that those earning more than the minimum wage are not entitled to spread-of-hours

pay."  Rui Xiang Huang v. J & A Entm't Inc., 09 Civ. 5587 (ARR) (VVP), 2012 WL 6863918, at

*8 (E.D.N.Y. Dec. 3, 2012), adopted by 2013 WL 173738 (E.D.N.Y. Jan. 16, 2013); see Jian

Zhong Chen v. JP Std. Constr. Corp., 14 Civ. 1086 (MKB) (RLM), 2016 WL 2909966, at *7

(E.D.N.Y. Mar. 18, 2016), adopted by 2016 WL 2758272 (E.D.N.Y. May 12, 2016) ("In

accordance with the clear weight of authority in this Circuit, as well as all precedent in this

District ruling on the issue, employees who earn in excess of the minimum wage are not entitled

to spread-of-hours compensation."); Carrasco-Flores v. Comprehensive Health Care & Rehab.

Servs., LLC, 12 Civ. 5737 (ILG) (JMA), 2014 WL 4954629, at *5 (E.D.N.Y. Oct. 2, 2014)

(based on the plain language of the spread-of-hours statute, only employees making minimum

wage are entitled to spread-of-hours payment); Guadalupe, 2013 WL 4547242, at *12-13

(holding that, in deference to New York State Department of Labor opinion letters, employees

making in excess of minimum wage are not entitled to spread-of-hours payments); Ellis v.

Common Wealth Worldwide Chauffeured Transp. of NY, LLC, 10 Civ. 1741 (DLI) (JO), 2012

WL 1004848, at *7-8 (E.D.N.Y. Mar. 23, 2012) (citing cases); Almeida v. Aguinaga, 500 F.

Supp. 2d 366, 370 (S.D.N.Y.2007) (stating that "the spread-of-hours provision is properly

limited to enhancing the compensation of those receiving only the minimum required by law").

---

[8]        There is no spread-of-hours claim counterpart under the FLSA.

Here, Plaintiffs all earned above the minimum wage.[9]  Docket No. 20-6.  Therefore, in line with the majority view within this Circuit, Plaintiffs are not entitled to recover spread-of-hours compensation.

In light of the above, it is respectfully recommended that the District Court **deny** Plaintiffs' request for spread-of-hours damages.

### iii.   Thai Cafe Should Be Held Liable To Plaintiffs For Failing To Furnish Wage Statements

Plaintiffs seek damages for Thai Cafe's failure to provide regular, accurate wage statements as required by New York's WTPA.  Docket No. 14 ¶¶ 22, 32, 43, 58.  At all times relevant to this matter, the WTPA provided that employees must

> furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages. For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked.

---

[9]      Plaintiff Jose Y. Lopez earned $10.47 per hour throughout his employment, which ran from May 1, 2011 through October 18, 2013; Plaintiff Placido Manjarrez earned $7.67 per hour throughout his employment, which ran from May 1, 2011 through October 18, 2013; and Plaintiff Pedro B. Lopez earned $9.05 per hour throughout his employment, which ran from June 1, 2011 through October 18, 2013.  Docket No. 14 ¶¶ 16-17, 27-28, 37-38.  New York's minimum wage was $7.25 from July 24, 2009 through December 31, 2013.  See https://www.labor.ny.gov/stats/minimum_wage.asp (last visited July 8, 2016).  Thus, each plaintiff's hourly earnings exceeded the minimum wage for the duration of his respective employment.

N.Y. Lab. Law § 195(3) (2011).  As each Plaintiff asserts that he was never provided with compliant wage statements during the entirety of his employment, Docket No. 14 ¶¶ 22, 32, 43, Thai Cafe failed to comply with  NYLL § 195(3).

In light of the foregoing, it is respectfully recommended that the District Judge **find** Thai Cafe liable to Plaintiffs for failing to furnish wage statements as required by the NYLL § 195 during Plaintiffs' respective periods of employment.[10]

### iv.    Conclusion

Accordingly, it is respectfully recommended that the District Judge **find** that Plaintiffs are entitled to the FLSA's and the NYLL's protections as employees employed by an enterprise engaged in commerce.

---

[10]    Although Plaintiffs seek damages for wage-statement violations under N.Y. Lab. Law § 195(3), it is unclear whether they also seek damages as a result of Thai Cafe's alleged failure to furnish wage notices under N.Y. Lab. Law § 195(1)(a).  "Since April 9, 2011, the NYLL has required that, at the time of hiring, [and annually through December 28, 2014,] employers provide their employees a written notice with the following information: (1) the rate or rates of pay and basis thereof; (2) allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; (3) the regular pay day designated by the employer; (4) the employer's name; (5) any 'doing business as' names used by the employer; (6) the physical address of the employer's main office or principal place of business, and a mailing address if different; (7) the employer's telephone number; and (8) such other information as the commissioner deems material and necessary."  Hernandez v. JRPAC Inc., 14 Civ. 4176 (PAE), 2016 WL 3248493, at *29 (S.D.N.Y. June 9, 2016) (citing N.Y. Lab. Law § 195(1)(a)) (brackets in the original).

As an initial matter, Plaintiffs' Amended Complaint does not distinguish between these separate claims; rather, Plaintiffs entitle the relevant section of their Amended Complaint, "New York Notices and Record-Keeping Requirements," Docket No. 14 ¶¶ 56-58, which simply mirrors the title of N.Y. Lab. Law § 195, which covers both types of claims.  Next, the body of Plaintiffs' Amended Complaint does not contain any specific allegations regarding wage notices (or lack thereof), whereas there are specific allegations regarding the lack of furnished wage statements.  Id. ¶¶ 22, 32, 43.  Although the damages chart submitted by Plaintiffs as part of their motion for default judgment contains a reference to wage-notice damages, Docket No. 20-6, Plaintiffs do not reference such claim in their memorandum in support of the motion, nor do Plaintiffs' affidavits contain any statements that Thai Cafe failed to provide wage notices.  Because neither the Amended Complaint nor Plaintiffs' affidavits contain facts regarding wage notices, this Court understands that Plaintiffs do not make such a claim.

Additionally, it is respectfully recommended that the District Judge **find** Thai Cafe liable to Plaintiffs for failing to pay them overtime compensation as required by the FLSA and the NYLL.

Lastly, it is respectfully recommended that the District Judge **find** Thai Cafe not liable to Plaintiffs for failing to pay spread-of-hours wages, as Plaintiffs are not entitled to receive spread-of-hours compensation.

### 4.        Damages

#### i.        The Law Relevant To Plaintiffs' Damages Calculations

I now address issues arising from Plaintiffs' requests for wage-statement-violation damages, liquidated damages and post-judgment interest under the FSLA and the NYLL, before calculating Plaintiffs' individual damages corresponding with Thai Cafe's liability, which are found in Appendices I-III and summarized herein.

#### a.        Wage Statement Violations

Prior to February 27, 2015, the WTPA entitled employees to recover statutory damages for violations of the wage statement requirement of $100 per workweek, not to exceed $2,500. See 2010 N.Y. Laws ch. 564 § 7, amending N.Y. Lab. Law § 198(1-d); see Baltierra v. Advantage Pest Control Co., 14 Civ. 5917 (AJP), 2015 WL 5474093, at *10 (S.D.N.Y. Sept. 18, 2015).  As each Plaintiff asserts that he was never provided with compliant wage statements during the entirety of his employment, Docket No. 14 ¶¶ 22, 32, 43, each is entitled to $100 per week that such violation occurred.  Plaintiff Jose Y. Lopez worked for 129 weeks, beginning May 1, 2011 and ending October 18, 2013; Plaintiff Placido Manjarrez worked for 124 weeks beginning June 1, 2011 and ending October 18, 2013; and Plaintiff Pedro B. Lopez worked for 129 weeks beginning May 1, 2011 and ending October 18, 2013.  Docket No. 20-8 ¶ 3, Docket

No. 20-9 ¶ 3, Docket No. 20-10 ¶ 3.  Therefore, it is respectfully recommended that the District

Court **find** that, pursuant to NYLL § 198, each Plaintiff is entitled to $2,500 as a result of Thai

Cafe's failure to comply with NYLL § 195(3).[11]

### b. Liquidated Damages

Under the FLSA, employers who violate the FLSA's overtime provision "shall be liable"

for the unpaid overtime compensation and "an additional equal amount as liquidated damages."

29 U.S.C. § 216(b).  The regulation further provides that if the employer demonstrates "the

omission . . . was in good faith and that he had reasonable grounds for believing that his . . .

omission was not a violation . . . the court may award no liquidated damages."  29 U.S.C. § 260.

Thus, the burden is on the defendant to prove that he acted both reasonably and in good faith.

This burden "is a difficult one to meet, however, and '[d]ouble damages are the norm, [not] the

exception . . . .'"  Brock v. Wilamowsky, 833 F.2d 11, 19 (2d Cir. 1987) (quoting Walton v.

United Consumers Club, Inc., 786 F.2d 303, 310 (7th Cir. 1986)).  "Liquidated damages under

the FLSA are considered compensatory rather than punitive in nature."  Reich v. S. New England

Telecommunications Corp., 121 F.3d 58, 71 (2d Cir. 1997).  "They 'constitute [ ] compensation

for the retention of a workman's pay . . . .'"  Id. (quoting Brooklyn Sav. Bank v. O'Neil, 324 U.S.

697, 706 (1945)).

The NYLL mirrors the FLSA statute and also provides for employees to recover "an

additional amount as liquidated damages equal to 100 percent of the total amount of the wages

found to be due . . . unless the employer proves a good faith basis for believing that its

---

[11]      Plaintiffs are each entitled to receive only $2,500 in damages because the statute
mandates that the damages are not to exceed $2,500.

underpayment of wages was in compliance with the law." N.Y. Lab. Law § 198(1)(a).[12]  Thus, in their current incarnations, both the FSLA and NYLL: (1) provide for liquidated damages equal to 100% of the total unpaid compensation found due; and (2) place the burden of avoiding liability on the defendant.

District courts in the Second Circuit are divided over whether a plaintiff should be allowed to recover liquidated damages simultaneously under both the state and federal statutes. See Villegas v. Monica Rest. Corp., 12 Civ. 4131 (VVP), 2013 WL 4046261, at *3 (E.D.N.Y. Aug. 8, 2013).  Courts awarding simultaneous recovery under both statutes have reasoned that the statutes serve different purposes.  See Yu G. Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240, 261-62 (S.D.N.Y. 2008).  These cases reason that "FLSA liquidated damages 'are considered compensatory rather than punitive in nature,' whereas NYLL liquidated damages are punitive because they 'constitute a penalty to deter an employer's willful withholding of wages due.'" Hernandez v. JRPAC Inc., 14 Civ. 4176 (PAE), 2016 WL 3248493, at *34 (S.D.N.Y. June 9, 2016) (quoting Reich, 121 F.3d at 71, & Reilly v. NatWest Mkts. Grp. Inc., 181 F.3d 253, 265

---

[12]      It is significant to note that, prior to November 2009, the NYLL allowed for liquidated damages only upon a finding that the employer's violation was "willful," and then awarded an amount equal to only twenty-five percent of the total owed.  N.Y. Lab. Law § 198(1)(a) (McKinney's 2007); see Eschmann v. White Plains Crane Serv., 11 Civ. 5881 (KAM) (VVP), 2014 WL 1224247, at *9 (E.D.N.Y. Mar. 24, 2014) ("Effective November 24, 2009, NYLL § 198(1-a) was amended to provide for a liquidated damages award equal to 25% of the amount of unpaid wages unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law.  Prior to November 24, 2009, a prevailing plaintiff was entitled to recover this amount of liquidated damages only if the plaintiff could prove that the employer's NYLL violations were 'willful.'" (citing N.Y. Lab. Law § 198(1)(a) (McKinney's 2007) & N.Y. Lab. Law § 198(1)(a) (McKinney's 2009))).  On April 9, 2011, the liquidated damages amount recoverable under the NYLL was increased from 25% to 100%.  See Najnin v. Dollar Mountain, Inc., 14 Civ. 5758 (WHP), 2015 WL 6125436, at *2 (S.D.N.Y. Sept. 25, 2015).

(2d Cir. 1999).  Endorsing this distinction, many courts have found that a plaintiff may recover liquidated damages under both statutes.[13]

Recent decisions, however, have departed from this view.  "'[T]he distinction between compensatory and punitive for characterizing liquidated damages under the FLSA and NYLL [is] semantic, exalting form over substance,'" Inclan v. New York Hosp. Grp., Inc., 95 F. Supp. 3d 490, 506 (S.D.N.Y. 2015) (quoting Gortat v. Capala Bros., 949 F. Supp. 2d 374, 381 (E.D.N.Y. 2013)), as "[b]oth forms of damages seek to deter wage-and-hour violations in a manner calculated to compensate the party harmed," Chuchuca v. Creative Customs Cabinets, Inc., 13 Civ. 2506 (RLM), 2014 WL 6674583, at *16 (E.D.N.Y. Nov. 25, 2014).  The recent amendments to the NYLL – which render the liquidated damages provision nearly identical to its FLSA counter-part – undermine the purported distinction in purpose between the two statutes. See Animas v. Balcon Quiteno Inc., 14 Civ. 3763 (CBA) (VVP), ECF No. 19, p. 14 (E.D.N.Y. Sept. 14, 2015), adopted by 2016 WL 1271478 (E.D.N.Y. Mar. 30, 2016).  The shift from requiring a showing of willfulness, to which a punitive response might have been appropriate, to simply requiring a showing of a statutory violation without any mens rea is a fundamental

---

[13]     See, e.g., Ni v. Bat-Yam Food Servs. Inc., 13 Civ. 7274 (ALC) (JCF), 2016 WL 369681, at *3 (S.D.N.Y. Jan. 27, 2016) (noting that, while courts in the Second Circuit are divided on the issue of cumulative liquidated damages, "allowing recovery under both statutes appears to be the majority approach") (internal quotations omitted); Melgadejo v. S & D Fruits & Vegetables Inc., 12 Civ. 6852 (RAH) (BP), 2015 WL 10353140, at *16 (S.D.N.Y. Oct. 23, 2015), adopted by 2016 WL 554843 (S.D.N.Y. Feb. 9, 2016) ("I shall follow the majority view and conclude that plaintiffs may recover liquidated damages under both the FLSA and NYLL."); Bazignan v. Team Castle Hill Corp., 13 Civ. 8382 (PAC), 2015 WL 1000034, at *3 (S.D.N.Y. Mar. 5, 2015) ("While a split of authority exists on whether a plaintiff may recover liquidated damages under both the FLSA and the NYLL for the same violations during the same time period, the majority of courts in the Second Circuit allow for the simultaneous recovery of both forms of liquidated damages.") (internal quotation marks & citations omitted); Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 91 (E.D.N.Y. 2012) (recommending an award of liquidated damages under both statutes because the Court was "persuaded that the two statutory provisions serve different purposes and are therefore not mutually exclusive").

change in the operation of the New Your State wage-and-hour scheme.  Eliminating a mental

state requirement removes the justification for considering the New York liquidated damages

provision as punitive or directed at a particular subset of conduct in which the motivation of the

defendant, rather than the harm caused to the plaintiff, is the focus.  See id. ("[W]ith the

elimination of the willfulness requirement and the increase in the liquidated damages percentage

. . . the NYLL liquidated damages provision is identical to the FLSA's provision, and it becomes

difficult to accept that it is designed to serve a different purpose from the FLSA's provision.");

Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 91 n.11 (E.D.N.Y. 2012)  ("To the extent the

federal and state statutes now provide for essentially identical remedies with respect to liquidated

damages, it is harder to argue that they are designed to compensate a plaintiff for disparate

harms.").

  I find the latter view – that is, Plaintiffs may only recover liquidated damages under one

of the FLSA or NYLL – more persuasive.  A conclusion otherwise effectively sanctions a

"judge-created treble damages remedy" that neither legislature – Congress nor New York –

appears to have envisioned.  Yun Hong Hua v. Eight Star Inc., 15 Civ. 275 (BMC), 2015 WL

2354322 at *4 (E.D.N.Y. May 15, 2015); see Castillo v. RV Transp., Inc., 15 Civ. 527 (LGS)

(JCF), 2016 WL 1417848, at *2 (S.D.N.Y. Apr. 11, 2016) ("Nothing in either [the FLSA or the

NYLL] suggests that the legislators envisioned or intended that successful plaintiffs would reap

what in effect are three times their damages, rather than double their damages as the statutes

explicitly provide."); Perez v. Queens Boro Yang Cleaner, Inc., 14 Civ. 7310 (SJ) (JO), 2016

WL 1359218, at *6 (E.D.N.Y. Mar. 17, 2016), adopted by 2016 WL 1337310 (E.D.N.Y. Apr. 5,

2016) (permitting liquidated damages under the FLSA and NYLL "would have the effect of

granting a prevailing plaintiff treble damages (in addition to other remedies) as a remedy for

wage law violations—a windfall that neither the state nor the federal legislature appears explicitly to have intended").[14]

"Even assuming there were once a plausibly substantive distinction between liquidated damages under the FLSA and NYLL, the recent amendments to the NYLL have undermined the basis for such a distinction."  Inclan, 95 F. Supp. 3d at 506; see Cabrera v. Dream Team Tavern Corp., 12 Civ. 6323 (ADS), ECF No. 87, p. 5 (E.D.N.Y. Apr. 29, 2016) ("[T]he purported distinction in purpose between the liquidated damages provisions is largely semantic and totally undermined by the 20[11] amendments to the NYLL.").  As District Judge Spatt recently explained:

> [The Court] sees no practical reason why a plaintiff should not be able to recover his single overtime wages under both statutes . . . but should then be permitted to recover liquidated damages under both statutes.  If he is not entitled to double recovery of his overtime wages, why then should he be entitled to double-recovery of liquidated damages?
>
> Divining different purposes from the [FLSA and NYLL] statutes is a speculative answer to that question at best.  And, without any particular language in the statutes speaking to this question, or any Second Circuit authority directly addressing it, the Court is not inclined to permit the Plaintiff to recover four times the amount of his overtime wages in liquidated damages.  One award of

---

[14]     See Courts Shy Away From Treble Damages in Wage, Hour Suits, N.Y. Law Journal, Feb. 29, 2016 ("Over the past several years, the courts have reversed course from the initial bevy of federal and state court decisions applying 200 percent liquidated damages.  Countless applications seeking 200 percent liquidated damages have since been denied by numerous judges who find such recoveries to be duplicative and unnecessary.  These courts continue to reason that both forms of damages seek to deter wage-and-hour violations in a manner calculated to compensate the plaintiff.  Even judges that still apply both NYLL and FLSA liquidated damages together have noted the recent trend away from granting 200 percent liquidated damages.  In fact, in some instances judges have begun abrogating their own precedent, and now embrace the view that double liquidated damages under the NYLL and FLSA are inappropriate given the similarities between both statutes.  Today, the prevailing view appears to be that applying liquidated damages remedies under both the NYLL and FLSA results in a windfall that neither the state nor the federal legislature appears explicitly to have intended.") (internal citations, quotations & alterations omitted).

> liquidated damages is sufficient to compensate the Plaintiff for
> delay in receiving his overtime and to deter the Defendants from
> future wage and hour violations.

Cabrera, ECF No. 87, p. 5-6 (citing Lopez v. Ploy Dee, Inc., 15 Civ. 647 (AJN), 2016 WL

1626631, at *2 n.1 (S.D.N.Y. Apr. 21, 2016) ("[T]here is persuasive authority in this circuit

holding that FLSA plaintiffs cannot 'double recover' liquidated damages under both statutes."));

see Animas, ECF No. 19, p. 13-14 ("[T]his court still maintains that rewarding liquidated

damages under both the FLSA and NYLL is unwarranted.").[15]

Accordingly, I respectfully recommend that the District Judge **find** that Plaintiffs are **not**

entitled to simultaneous liquidated damages under both the FLSA and NYLL, but instead, only

under whichever statute provide them a greater potential recovery.  See, e.g., Quiroz v. Luigi's

Dolceria, Inc., 14 Civ. 871 (VVP), 2016 WL 2869780, at *6 (E.D.N.Y. May 17, 2016) ("[T]he

recent trend has moved away from awarding liquidated damages under both the FLSA and the

NYLL, and instead making a single award under the statute that provides the greater recovery.

Continuing to follow that trend, I decline to provide cumulative liquidated damages under both

statutes." (citing cases)); Cabrera, ECF No. 87, p. 6.

Here, Thai Cafe has not answered or responded at all to this action, much less

demonstrated a "good faith" basis for believing the "underpayment" of Plaintiffs' overtime

wages was lawful, as both the FLSA and the NYLL require in order to prevent the imposition of

liquidate damages.  By contrast, Plaintiffs have alleged that Thai Cafe's FLSA and NYLL

violations were knowing and willful.  Docket No. 14 ¶¶ 49-50, 54.

---

[15]     Of course, in those cases in which a plaintiff can obtain six years of compensatory
damages, three under the NYLL alone, the plaintiff receives only a single recovery of liquidated
damages for the earlier three-year period.  The conclusion that the purposes of the FLSA and
NYLL are consistent harmonizes the damages recoverable under the two statute-of-limitations
periods.

As such, it is respectfully recommended that the District Court **find** that Plaintiffs are permitted to recover liquidated damages under the greater of the FLSA or NYLL, where both forms of damages are otherwise available for the same violation.

### c.  Post-Judgment Interest[16]

Plaintiffs seek post-judgment interest under 28 U.S.C. § 1961, which states, "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court."  28 U.S.C. § 1961(a).  Pursuant to this statute, Plaintiffs are entitled to post-judgment interest.  See Blue v. Finest Guard Services, Inc., 09 Civ. 133 (ARR), 2010 WL 2927398, at *13 (E.D.N.Y. June 24, 2010) (awarding post-judgment interest on an FLSA- and NYLL-based default judgment); Pereira v. J. Sister Hair Care Productions, Inc., 08 Civ. 4537 (GBD) (RLE), 2010 WL 2194808, at *4 (S.D.N.Y. Apr. 5, 2010), adopted by 2010 WL 2194807, at *4 (S.D.N.Y. June 1, 2010) (same).  Indeed, "[t]he very language of 28 U.S.C. § 1961 ensures that an award of post-judgment interest is mandatory in any civil case where money damages are recovered."  Duffy v. Oyster Bay Indus., Inc., 10 Civ. 3205 (ADS) (ETB), 2011 WL 2259798, at *3 (E.D.N.Y. Mar. 29, 2011).  The amount of "interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."  28 U.S.C. § 1961(a).

In light of the above, it is respectfully recommended that the District Judge **order** Thai Cafe to pay Plaintiffs post-judgment interest, to be calculated from the date the Clerk of the

---

[16]     Although Plaintiffs' Amended Complaint sought pre-judgment interest, Docket No. 14 ¶¶ 58, 62, Plaintiffs did not seek pre-judgment interest, nor allege entitlement to such interest, in their motion for default judgment.  See generally Docket Nos. 20-8, 20-9, 20-10, 21. Accordingly, it is not considered in this report and recommendation.

Court enters judgment in this action until the date of payment, using the federal rate set forth in 28 U.S.C. § 1961.[17]

### ii.  Plaintiffs' Individual Damages Calculations[18]

#### a.  The Damage Calculations Specific to Jose Y. Lopez

The calculations relevant to Mr. Lopez's damages are provided in Appendix I.  In accordance with those calculations, it is respectfully recommended that judgment be **entered** in Mr. Lopez's favor and against Thai Cafe in the amount of **$16,207.56** for unpaid overtime premium pay for hours worked in excess of forty hours per week; **$16,207.56** in liquidated damages under the FLSA; and **$2,500** for wage statement damages.  In total, Mr. Lopez's award is **$34,915.12**.

#### b.  The Damage Calculations Specific to Placido Manjarrez

The calculations relevant to Mr. Manjarrez's damages are provided in Appendix II.  In accordance with those calculations, it is respectfully recommended that judgment be **entered** in Mr. Manjarrez's favor and against Thai Cafe in the amount of **$9,510.80** for unpaid overtime premium pay for hours worked in excess of forty hours per week; **$9,510.80** in liquidated

---

[17]  Plaintiffs request a post-judgment interest rate of .67, claim this rate to be the weekly average 1-year constant maturity Treasury yield for the week ending June 2, 2016 (approximately two weeks prior to the filing of Plaintiffs' motion for default judgment). According to 28 U.S.C. § 1961(a), post-judgment interest shall be determined by the rate for the calendar week preceding the judgment.  It is, thus, premature to determine the applicable interest rate.

[18]  Although Thai Cafe is liable under both the NYLL and FLSA for failing to compensate Plaintiffs for their overtime, Plaintiffs are permitted to recover unpaid overtime compensation under only one statute for any period of statutory overlap.  See Pinzon v. Paul Lent Mech. Sys. Inc., 11 Civ. 3384 (DRH) (WDW), 2012 WL 4174725, at *3 (E.D.N.Y.  Aug. 21, 2012), adopted by 2012 WL 4174410 (E.D.N.Y. Sept. 19, 2012) (the plaintiff may "not double dip" or obtain a "double recovery" of unpaid overtime wages under the FLSA and the NYLL).  Plaintiffs have not made an explicit claim for simultaneous recovery under both statutes, nor do their damages calculations reflect that they seek to recover damages under both statutes.  See Docket No. 20-6.

damages under the FLSA; and **$2,500** for wage statement damages.  In total, Mr. Manjarrez's award is **$21,521.60**.

### c.    The Damage Calculations Specific to Pedro B. Lopez

The calculations relevant to Mr. Lopez's damages are provided in Appendix III.  In accordance with those calculations, it is respectfully recommended that it is respectfully recommended that judgment be entered in Mr. Lopez's favor and against Thai Cafe in the amount of **$13,425.68** for unpaid overtime premium pay for hours worked in excess of forty hours per week; **$13,425.68** in liquidated damages under the FLSA; and **$2,500** for wage statement damages.  In total, Mr. Lopez's award is **$29,351.35**.

### iii.    Attorney's Fees, Paralegal's Fees And Costs

Plaintiffs also request that the Court award attorney's fees and costs.  <u>Docket No. 14</u> ¶ 51, 55, 58, 62; <u>Docket No. 21</u> at 8.  "Both the FLSA and NYLL provide for prevailing plaintiffs to be awarded attorneys' fees and costs for actions to recover unpaid wages."  29 U.S.C. § 216(b) ("The court . . . shall . . . allow a reasonable attorney's fee to be paid by the defendants, and costs of the action."); N.Y. Lab. Law § 663(1) ("[P]revailing employee shall recover underpayments 'together with costs all reasonable attorney's fees."); <u>Hernandez</u>, 2016 WL 3248493, at *36.

### a.    Attorney's Fees

The awarding of attorney's fees is within the discretion of the district court.  <u>See</u> <u>LeBlanc-Sternberg v. Fletcher</u>, 143 F.3d 748, 758 (2d Cir. 1998).  The moving party bears the burden of demonstrating the reasonableness of the requested fees to the court.  <u>Guadalupe</u>, 2013 WL 4547242, at *17.  Requests for attorney's fees in this Circuit must be accompanied by contemporaneous time records that show for each attorney the date the work was done, "the hours expended, and the nature of the work done."  <u>Koon Chun Hing Kee Soy & Sauce Factory,</u>

Ltd. v. Kun Fung USA Trading Co. Inc., 07 Civ. 2568 (JG), 2012 WL 1414872, at *10

(E.D.N.Y. Jan. 20, 2012) (quoting N.Y.S. Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d

1136, 1148 (2d Cir. 1983)); see Scott v. City of N.Y., 643 F.3d 56, 58-59 (2d Cir. 2011).

"Where the documentation of hours is inadequate, the district court may reduce the award

accordingly." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

In support of their request for attorney's fees, Plaintiffs submit both an affidavit and an

invoice from Plaintiffs' counsel, Mathew Beckwith. Docket Nos. 20-1, 20-5. In his affidavit,

Mr. Beckwith states that he is an associate with the law firm Saco & Fillas, LLP, has been

practicing since 2010 and focuses on employment law, including wage-and-hour cases and

employment discrimination. Docket No. 20-1 ¶ 22(e)(i). Based on the invoice submitted, Mr.

Beckwith seeks for himself an hourly fee of $350; an hourly fee of $350 for his associate, Scott

Laird;[19] and an hourly fee of $105 for an unnamed paralegal. Docket No. 20-5.

Courts may look to the hourly rates applied within the district in which they sit, when

determining a reasonable hourly rate. See Simmons v. New York City Transit Auth., 575 F.3d

170, 174 (2d Cir. 2009). After so doing, it is respectfully recommended that the District Court

reduce Mr. Beckwith and Mr. Laird's fee requests to $225.00 per hour, given the relative

simplicity of this default judgment, and the limited number of years both Mr. Beckwith and Mr.

Laird have been practicing. This rate is in line with other recent awards in this District, which

have recognized that "a reasonable hourly rate for a senior associate ranges from $200 to $300,

[while] [j]unior associates generally command $100 to $150 dollars per hour," Hui Luo v. L&S

---

[19]     Mr. Laird did not submit an affidavit with his qualifications to this court. The New York
State Unified Court System attorney look-up system lists him as a registered member of the New
York State Bar since 2011, and he has an attorney profile on Saco & Fillas's website. This Court
will accept this information given the relatively insignificant number of hours expended by Mr.
Laird on this matter, but notes that in the future, Mr. Laird would better serve himself and this
Court by submitting his qualifications by affidavit.

Acupuncture, P.C., 14 Civ. 1003 (BMC), 2015 WL 1954468, at *2 (E.D.N.Y. Apr. 29, 2015),

and falls within the range of rates which have routinely been awarded to associates with similar

experience in FLSA cases.  See, e.g., Gomez, 2014 WL 1310296, at *11 (awarding $175 per

hour for an associate practicing for approximately 3 years); Galeana v. Lemongrass on Broadway

Corp., 120 F. Supp. 3d 306, 324 (S.D.N.Y. 2014) (awarding $250 per hour to an associate with 8

years of experience handling FLSA claims); Duncan v. Revma Electric, Inc., 11 Civ. 5952

(CBA) (VMS), 2013 WL 4899531, at *3 (E.D.N.Y. Sept. 11, 2013) (awarding $100 per hour for

attorney who had practiced employment law for 4 years); Jean v. Auto & Tire Spot Corp., 09

Civ. 5394 (ARR) (RLM), 2013 WL 2322834, at *7 (E.D.N.Y. May 28, 2013) (awarding $175

per hour for an associate practicing for approximately 3 years); Jemine v. Dennis, 901 F. Supp.

2d 365, 384 (E.D.N.Y. 2012) (finding reasonable $250 per hour for senior associate with nearly

nine years of experience practicing employment law and $150 for junior associate with two years

of experience practicing law); Janus v. Regalis Const., Inc., 11 Civ. 5788 (ARR) (VVP), 2012

WL 3878113, at *12 (E.D.N.Y. July 23, 2012), adopted by 2012 WL 3877963 (E.D.N.Y. Sept.4,

2012) (recommending an award of $200 per hour for associates who graduated in 2008 and

2011, respectively).  Furthermore, this rate is on par with a rate previously awarded to Mr.

Beckwith by another court in this district in 2014.[20]  See Jaramillo v. Banana King Rest. Corp.,

12 Civ. 5649 (NGG) (RML), 2014 WL 2993450, at *8 (E.D.N.Y. July 2, 2014) (reducing Mr.

Beckwith's request for an hourly rate of $300 to $200).

     I now address the reasonableness of the number of hours for which Plaintiffs' counsel

requests compensation.  "The district court . . . should exclude from this initial fee calculation

---

[20]    In the memorandum of law supporting Plaintiffs' request for default judgment, Mr. Beckwith makes reference to a decision in this District in which he was purportedly awarded an hourly rate of $350.  A citation to this decision was not included in the submission, nor was any case caption; thus, it is not considered in this recommendation.

hours that were not 'reasonably expended.'" Hensley, 461 U.S. at 424 (quoting S.Rep. No. 94-1011, p. 6 (1976)).  "Hours that are 'excessive, redundant, or otherwise unnecessary,' are to be excluded, and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed, 'as a practical means of trimming fat from a fee application.'" Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998) (quoting Hensley, 461 U.S. at 444); N.Y.S. Ass'n for Retarded Children, 711 F.2d at 1146.

Here, Plaintiffs' counsel seeks fees for 26.3 hours of work completed by Mr. Beckwith, and 1.3 hours by Mr. Laird.  Docket No. 20-5.  After a careful review, I find the number of hours for which counsel requests compensation to be reasonable, with one exception. Mr. Beckwith requests compensation for 4.9 hours that he spent drafting and reviewing the Amended Complaint, filing and preparing same for service and conducting legal research (presumably in connection with the Amended Complaint).  Id.  In contrast, Mr. Beckwith requests only 3 hours of compensation for drafting the original complaint.  Id.  There is little difference between the two documents, and certainly not enough, in the opinion of this Court, to warrant nearly five hours of additional labor.  Therefore, it is respectfully recommended that Mr. Beckwith receive compensation for three hours of labor spent in connection with the Amended Complaint, which is the same number of hours he requested in connection with work spent drafting the original complaint, given their near identical lengths[21] and the scarcity of differences between the two documents.  Given this reduction, it is respectfully recommended that Mr. Beckwith receive 24.4 hours of compensation, and that Mr. Laird receive the 1.2 hours originally requested.  Thus, in sum, Plaintiffs should recover 25.6 hours of attorney's fees at $225 per hour.

---

[21]     The Amended Complaint is ten pages, while the original complaint is nine pages.  See Docket Nos. 1, 14.

The invoice also includes a request for fees for an unnamed paralegal at an hourly rate of $105 for 0.3 hours of work.  It is respectfully recommended that this rate be reduced to $100 per hour, which is the going rate for paralegals in this District.  See, e.g., D'Annunzio v. Ayken, Inc., 11 Civ. 3303 (WFK) (WDW), 2015 WL 5308094, at *4 (E.D.N.Y. Sept. 10, 2015) ("Courts in the Eastern District of New York award hourly rates ranging from . . . $70 to $100 per hour for paralegals."); Hernandez v. Prof'l Maintenance & Cleaning Contractors, Inc., 13 Civ. 2875 (FB) (LB), 2015 WL 128020, at *8 (E.D.N.Y. Jan. 8, 2015) (reducing a request for paralegal fees from $130 per hour to $75 per hour).

In sum, it is respectfully recommended that the District Judge allow Plaintiffs to recover **$5,833.10 in attorney's fees**.  This is a reduction from the $9,656.50 originally requested, reached by adding the reasonable attorney rates ($225/hour * 25.6 hours) and the reasonable paralegal rates ($100/hour * 0.3 hours ).

### b.    Costs

Plaintiffs also seek an award of costs in the amount of $595.00; $400.00 for the filing fee and two process server fees in the amount of $85.00 and $110.00.  Both the NYLL and the FLSA provide for the recovery of costs in an action successfully brought under the aforementioned statutes.  See 29 U.S.C. § 216(b); NYLL § 198(4).

Plaintiffs do not provide substantiating documentation of these incurred costs.  The docket does reflect that a filing fee of $400.00 was paid, Docket Entry 04/01/2014, and the process server fees, in this Court's experience, fall in line with those routinely awarded, satisfying this Court that the charge is legitimate.  As such, I find these costs to be reasonable.

In light of the above, it is respectfully recommend that the District Judge **grant** Plaintiffs' request for **$595.00 in costs**.

### c.      Conclusion

In accordance with the foregoing, it is respectfully recommended that the District Judge **order** Thai Cafe to pay Plaintiffs **$6,428.10 in attorney's fees and costs** (representing $5,833.10 in attorney's fees and $595.00 in costs).

## IV.      CONCLUSION

Thus, it is respectfully recommended that the District Judge **enter** default judgment against Thai Cafe in favor of Plaintiffs as discussed above; **enter** judgment against Defendant Thai Cafe in the amount of **$85,788.07** in damages, which represents compensatory damages in the amount of $34,915.12 for Jose Y. Lopez, $21,521.60 for Placido Manjarrez and $29,351.35 for Pedro B. Lopez; **award** Plaintiffs attorney's fees and costs against Defendant Thai Cafe in the amount of **$$6,403.10**; and **order** Defendant Thai Cafe to pay Plaintiffs post-judgment interest.  It is respectfully recommended that the District Court **deny** the remainder of Plaintiffs' motion.

## V.     OBJECTIONS

This Report and Recommendation will be filed electronically and a copy sent by mail to Defendant Thai Cafe Inc., d/b/a Thai Cafe at 925 Manhattan Avenue, Brooklyn, New York 11222.  Objections to this Report and Recommendation must be filed, with a courtesy copy sent to the Honorable Frederic Block, at the United States District Court for the Eastern District of New York, 225 Cadman Plaza East, Brooklyn, New York 11201, within seventeen days of filing.  Failure to file objections within the specified time waives the right to appeal before both the district court, and appellate court.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Small v. Secretary of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

Dated: August 25, 2016
          Brooklyn, New York

*Vera M. Scanlon*
—————————————————
          VERA M. SCANLON
          United States Magistrate Judge

**APPENDIX I - JOSE LOPEZ**

**Overtime Pay Calculation For Over Forty Hours Worked Per Week**

| Dates | Weeks Worked | Hours Worked Per Week | Overtime Hours Per Week (Weekly Hours - 40) | Hourly Rate of Pay | Half Time Rate (Regular Rate * .5) | Total Overtime Wages Owed (Half Time Rate * Hours > 40 * Weeks) | % of Liquidated Damages Allowed Under the FLSA | Total Liquidated Damages (Total Overtime Wages Due * 100%) |
|---|---|---|---|---|---|---|---|---|
| 5/1/2011 - 10/18/2013 | 129 | 64 | 24 | $10.47 | $5.24 | $16,207.56 | 100% | $32,415.12 |

**No Wage Statement Damages**

| Dates | Statutory Basis For Damages | Weeks Worked | Damages Per Week | No Wage Statement Damages (Weeks * $100 [capped at $2,500]) |
|---|---|---|---|---|
| 5/11/2011 - 10/18/2013 | NYLL § 195(3) | 129 | $100.00 | $2,500.00 |

**Total Damages**

| Overtime Damages and Liquidated Damages | No Wage Statement Damages | Total Damages |
|---|---|---|
| $32,415.12 | $2,500.00 | $34,915.12 |

**APPENDIX II - PLACIDO MANJARREZ**

**Overtime Pay Calculation For Over Forty Hours Worked Per Week**

| Dates | Weeks Worked | Hours Worked Per Week | Overtime Hours Per Week (Weekly Hours - 40) | Hourly Rate of Pay | Half Time Rate (Regular Rate * .5) | Total Overtime Wages Owed (Half Time Rate x Hours > 40 * Weeks) | % of Liquidated Damages Allowed Under the FLSA | Total Liquidated Damages (Total Overtime Wages Due * 100%) |
|---|---|---|---|---|---|---|---|---|
| 6/1/2011 - 10/18/2013 | 124 | 60 | 20 | $7.67 | $3.84 | $9,510.80 | 100% | $19,021.60 |

**No Wage Statement Damages**

| Dates | Statutory Basis For Damages | Weeks Worked | Damages Per Week | No Wage Statement Damages (Weeks * $100 [capped at $2,500]) |
|---|---|---|---|---|
| 6/1/2011 - 10/18/2013 | NYLL § 195(3) | 124 | $100.00 | $2,500.00 |

**Total Damages**

| Overtime Damages and Liquidated Damages | No Wage Statement Damages | Total Damages |
|---|---|---|
| $19,021.60 | $2,500.00 | $21,521.60 |

**APPENDIX III - PEDRO LOPEZ**

**Overtime Pay Calculation For Over Forty Hours Worked Per Week**

| Dates | Weeks Worked | Hours Worked Per Week | Overtime Hours Per Week (Weekly Hours - 40) | Hourly Rate of Pay | Half Time Rate (Regular Rate * .5) | Total Overtime Wages Owed (Half Time Rate x Hours > 40 * Weeks) | % of Liquidated Damages Allowed Under the FLSA | Total Liquidated Damages (Total Overtime Wages Due * 100%) |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| 5/1/2011 - 10/18/2013 | 129 | 63 | 23 | $9.05 | $4.53 | $13,425.68 | 100% | $26,851.35 |

**No Wage Statement Damages**

| Dates | Statutory Basis For Damages | Weeks Worked | Damages Per Week | No Wage Statement Damages (Weeks * $100 [capped at $2,500]) |
|---|---|---|---|---|
| | | | | |
| 5/1/2011 - 10/18/2013 | NYLL § 195(3) | 129 | $100.00 | $2,500.00 |

**Total Damages**

| Overtime Damages and Liquidated Damages | No Wage Statement Damages | Total Damages |
|---|---|---|
| | | |
| $26,851.35 | $2,500.00 | $29,351.35 |